Hon. MILO L. BENNETT,
Hon. LUKE P. POLAND, } Assistant Judges.
Hon. ASA O. ALDIS,

---

*In re* MIRON FOOT.

*Arrest and commitment of the defendant in an action on contract.*

If one be arrested in an action on contract, and appear before the authority signing the writ, or a judge of the county court, and submit himself to examination upon the question whether he is about to abscond or remove from this State, etc., such authority or judge is not obliged to decide that question immediately, but may continue the examination to a convenient time at his discretion; and during such continuance the officer may commit the defendant to the county jail upon the process.

*In re* Miron Foot.

HABEAS CORPUS. The facts which appeared on trial, and which are important to the decision of the case are, that the relator resided in the State of New York, and while he was going through this State upon business, as he had been long accustomed to do, was arrested on the 17th of January, 1859, upon mesne process in a civil action founded on a note executed since 1839, by virtue of an affidavit of the creditor's agent, that he was about to abscond or remove from the State, and had property secreted sufficient to pay the debt. The relator immediately gave notice of his desire to be examined before the authority issuing the writ in regard to the facts set forth in the affidavit, and be released from the arrest by the certificate of the magistrate in conformity with the statute. The magistrate signing the writ, upon motion of the creditor, continued the hearing upon the question of granting the certificate until the 25th of January, 1859, a period later than the time of the hearing in this court, and the officer committed the relator to jail by virtue of his process, where he is still detained.

The relator claimed that his commitment was wholly unauthorized; that the magistrate had no authority to continue the hearing, and that having done so without authority, the relator was thereby entitled to be discharged; but if not, that it was, at all events, the duty of the officer to hold him in custody till after the final disposition of the question before the magistrate, and that the commitment was, in either view, without authority.

No briefs of counsel were furnished to the reporter.

REDFIELD, Ch. J. The statute seems to contemplate the introduction of evidence (before the authority issuing writs against the body of debtors in matters of contract or before one of the county court judges), besides that of the debtor, in order to determine the propriety of releasing the body from arrest. It in terms secures that right. This must by implication, as we think, give the power to the magistrate to adjourn the hearing for reasonable cause, and to a convenient time, of which the magistrate must of necessity be the sole judge.

This is obvious from the act of 1854, p. 14. The statute does not provide that the authority must certify that he is of opinion

that the facts contained in the affidavit are true, in order to continue the capias against the debtor in force. But if he shall not be of opinion that the " debtor is about to abscond," etc., in the words of the required affidavit he shall so certify, and the writ shall thereafter have the effect of an attachment against the property only, thus leaving the capias in force, unless the certificate shall be granted. This was so held in *Exparte* Hosley, 22 Vt. 363.

But the statute of 1857 seems to provide that in all such cases, where the debtor informs the officer that he desires a hearing before the authority issuing the writ, or the county judge, with a view to obtain the certificate, it shall be the duty of the officer to convey the debtor to the place of examination, " and such officer shall have no right to commit such debtor or defendant to jail, *till such examination shall be had.*" If this were to be understood literally, and be held applicable to this case, the relator would clearly be entitled to his discharge from the present imprisonment, as wholly unauthorized by law. Some members of the court were at first inclined to regard the second section of the act of 1857, as only applying to cases specified in the first section. But it is obvious that the second section was intended to have a wider application. It, in terms, extends to all such inquiries, whether held by the authority issuing the writ or by a county judge, whereas the first section applies solely to writs served in one county and returnable in another, where it is provided the hearing may be had before a county court judge of the county where the arrest was made. It would seem very wonderful then, in the next section, to enlarge the provision to hearings before the subscribing authority of the writ, and not intend to include writs returnable in the same county as well as in other counties. Such a distinction would not only be without any just foundation in principle or propriety, but it would be idle to suppose the legislature could really have contemplated any such result. As the language then is broad enough to include all such inquiries, it would be unreasonable, we think, to give it a more restricted application. It will then include the present case.

Whether then, the officer, when the justice adjourns the hearing for a long time, is bound to keep the defendant at his own risk and expense, seems somewhat questionable. It would seem

that he may do so. The statute in terms provides that. But if he do not choose to incur any such hazard, we are not prepared to hold that he is bound to do so.

All officers and courts who have occasion to detain persons in arrest and custody, may substitute the county jail for their own custody, upon general principles, where there is no statutory prohibition. And we do not think this statute was intended to prohibit the officer from keeping the defendant in jail, in case of adjournment of the hearing. And if the relator is rightfully committed and detained at the time of the service of his writ, he is not entitled to a discharge, certainly without showing the expiration of the authority, which does not appear in the present case.

But I should not myself be prepared, without more consideration, to give the provision in the act of 1857, any such literal application as to require officers to hold debtors, or defendants, under arrest for weeks, at the caprice of others. The thing would, or might, become literally impracticable. The case might occur that the magistrate should refuse to entertain the question, or to have any such hearing. The officer clearly could not discharge the defendant, as was held in Hosley's case, 22, Vt. 363. Is he then bound to hold him in custody till the return day of the writ?

It seems not to have entered into the minds of the framers of the act, that the hearing might be delayed or continued. The act was passed to meet a single case probably, as is many times the case, and when we come to give it a general application we find serious obstacles, because the framers had in mind only one case. But we have only to choose the least evil which will carry us fairly through. And this it seems to me, will be to regard this provision as only extending to the giving the defendant an opportunity to have a hearing before he is committed. But if the authority declines to proceed in the hearing for any cause, whether on account of delay or denial, the officer may then commit and return his process.

The fact that this construction will always put it in the power of interested or unprincipled persons to abuse the process, is not an argument which is altogether controlling. This is true in all cases. And it is not in the power of courts to prevent it alto-

gether. And when we adopt constructions mainly with that view, we are liable to fall into inconsistencies on the opposite hand.

As we are not prepared to pronounce the imprisonment illegal, the relator is remanded, and the petition dismissed without costs.