STATE of Wisconsin, Plaintiff-Respondent,

v.

Robert B. LOPEZ, Defendant-Appellant.†

Court of Appeals

*No. 92-0539-CR.   Submitted on briefs October 8, 1992.—Decided December 8, 1992.*

(Also reported in — N.W.2d —.)

†Petition to review dismissed.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Mitchell Barrock* of *Barrock & Barrock* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the briefs of *James E. Doyle,* attorney general, and *David J. Becker,* assistant attorney general.

Before Sullivan, Fine and Schudson, JJ.

FINE, J. Robert Lopez appeals his conviction of possession of cocaine and heroin. *See* sections 161.16(2)(b)1, 161.41(3) (cocaine) and 161.14(3)(k), 161.41(2) (heroin). He claims trial-court error in ruling that the State's peremptory challenge of a Native-American man during the course of jury selection did not violate Lopez' rights under the Sixth and Fourteenth Amendments of the United States Constitution. Lopez also claims that the evidence was insufficient to support the jury's verdict. We affirm.

## I.

Lopez was arrested in a Milwaukee apartment when police, conducting a search pursuant to a warrant, found him sleeping naked in one of the bedrooms. One of the arresting officers testified that they saw a "drop bucket" in the bedroom. The bedroom was approximately eight feet by ten feet. During his testimony, the officer explained that drop buckets are filled with solvents to destroy evidence of controlled substances, and are commonly found in places where illegal drugs are used and sold. The police retrieved from the drop bucket plastic bags containing heroin and cocaine. They also found various items of drug paraphernalia as well as bills and other mail addressed to Lopez at the apartment's address, some dating back several years, and a photograph album with his pictures in it.

## II.

A. *The Peremptory Challenge.*
Lopez is Hispanic. He claims that the State violated his right to equal protection of the law, under the Sixth and Fourteenth Amendments of the United States Constitution, by exercising one of its peremptory challenges

to exclude a Native American from the petit jury. We disagree.

"Purposeful racial discrimination in selection of the venire violates a defendant's right to equal protection because it denies him the protection that a trial by jury is intended to secure." *Batson v. Kentucky*, 476 U.S. 79, 86 (1986). This principle is as old as the Fourteenth Amendment itself. *Id.*, 476 U.S. at 85 (*citing Strauder v. West Virginia*, 100 U.S. 303, 306-307 (1880)). *Batson* held that a defendant's right to an impartial jury is violated when a venireperson of the same race as the defendant is excluded from jury service for that reason. *Batson*, 476 U.S. at 86-96. The *Batson* rule now applies to peremptory challenges of members of the venire panel even though they are of a different race than the defendant. *Powers v. Ohio*, 113 L.Ed.2d 411, 428 (1991).

*Batson* relaxed the evidentiary burden on a defendant claiming purposeful discriminatory use of peremptory challenges. The required analysis was recently summarized by the Supreme Court:

> First, the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race. Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination.

*Hernandez v. New York*, 114 L.Ed.2d 395, 405 (1991) (citations omitted). Thus, unless a defendant makes the *prima facie* showing that the prosecutor has used peremptory challenges on the basis of race, steps two and three of the analysis are not reached.

The Wisconsin Supreme Court has left open the question of what standard of review applies to a trial court's determination of whether a defendant has made a *prima facie* case. *State v. Walker*, 154 Wis. 2d 158, 177 n.13, 453 N.W.2d 127, 135 n.13 (1990), *cert. denied*, 112 L.Ed.2d 406. Last year, we determined that a "trial court's ultimate ruling" on whether a prosecutor used a peremptory challenge "in a purposefully discriminatory manner" was subject to the "clearly erroneous" standard of review on appeal. *State v. Davidson*, 166 Wis. 2d 35, 41-42, 479 N.W.2d 181, 184 (Ct. App. 1991). We now decide that this standard applies to each of the intermediate steps outlined in the *Batson/Hernandez* analysis as well.

The United States Supreme Court has recognized that "discriminatory intent" in the *Batson* context is a "pure issue of fact." *Hernandez*, 114 L.Ed.2d at 408-409, 414 (plurality opinion, agreed-to on this point by Justices O'Connor and Scalia). A trial court's findings of fact will not be overturned on appeal unless they are "clearly erroneous." Rule 805.17(2), Stats.[1] Where multiple inferences are possible from credible evidence, we must accept those drawn by the trial court. *See Noll v. Dimiceli's, Inc.*, 115 Wis. 2d 641, 644, 340 N.W.2d 575, 577 (Ct. App. 1983). The rationale for applying such a deferential standard is that the determination of discriminatory intent is largely informed by the trial judge's perceptions at voir dire. *See United States v. Hughes*, 970 F.2d 227, 230 (7th Cir. 1992). We review Lopez' *Batson* claim against this standard.

---

[1] Rule 805.17(2), Stats., applies to a trial court's findings of fact in criminal cases. Rule 972.11(1), Stats., *State v. Pickett*, 150 Wis. 2d 720, 724 n.2, 442 N.W.2d 509, 511 n.2 (Ct. App. 1989).

To make a *prima facie* showing under *Batson* , as modified by *Powers*, a defendant must show that the facts and circumstances "raise an inference" that the prosecution exercised its peremptory challenges, which *Batson* recognized can provide a cover for those "who are of a mind to discriminate," with a racially-discriminatory intent. *Batson*, 476 U.S. at 96. *See also Powers*, 113 L.Ed.2d at 428. A trial court presented with a *Batson/Powers*-based motion must consider all the circumstances relevant to the prosecutor's intent, *Batson* , 476 U.S. at 96, including whether the prosecutor eliminated all members of a racial group or groups from the venire panel, and whether the excluded members were "suitable candidates for exclusion by the prosecutor" on racially-neutral grounds, *see Walker*, 154 Wis. 2d at 173-175, 453 N.W.2d at 133-134.[2]

In this case, the only evidence offered by Lopez' trial counsel in support of the contention that the prosecutor acted with discriminatory intent was that both Lopez and the excluded venireman were members of cognizable minorities. The trial court denied Lopez' motion for a mistrial, finding that two of the thirteen jurors were Hispanic and had not been challenged; that the "only other potential minority" who was struck from the venire panel was struck by the defense, not the prosecution; and that the excluded venireman admitted during the *voir dire* that he had negative feelings toward the police. In connection with this last finding, the trial court noted that a police officer would be testifying for

---

[2] *Walker* predated *Powers'* expansion of *Batson*, and was thus concerned with venire-panel members who were of the defendant's race. *Walker*, 154 Wis. 2d at 173-175, 453 N.W.2d at 133-134. We read *Walker* in light of *Powers*.

the prosecution, and that this could have its repercussions to the prosecution team of police and district attorney.[3] The trial court also found that there was no pattern of striking minorities by the prosecutor.[4] These findings are not clearly erroneous. Accordingly, Lopez did not satisfy the first step under the *Batson/Hernandez* analysis; that is, Lopez did not make a *prima facie* showing that the peremptory challenge was based on race. Thus, although the prosecutor was allowed to speak at the *Batson* hearing, the burden of proof never shifted to the prosecution.[5]

B. *Sufficiency of the Evidence.*

Lopez also argues that the evidence was insufficient to convict him of possessing cocaine and heroin. Specifically, he alleges that the state failed to sufficiently link

---

[3] Lopez' trial counsel argued that this latter concern was vitiated by the venireman's testimony that his feelings would not affect his ability to be an impartial juror. The trial court correctly pointed out that this testimony could be used to fight a challenge for cause, but not the prosecutor's peremptory challenge.

[4] A pattern of striking persons from the venire panel who are members of recognized minorities may alone supply an inference of purposeful discrimination. *See Batson*, 476 U.S. at 95. *Batson* also explained, however, that "[f]or evidentiary requirements to dictate that 'several must suffer discrimination' before one could object would be inconsistent with the promise of equal protection to all." *Id.*, 476 U.S. at 95-96 (citation omitted). Thus, there need be no *systematic* pattern of discrimination under *Batson*. Accordingly, the Wisconsin Judicial Benchbook for criminal law, which discusses *Batson* under the heading Systematic Exclusion of Jurors, is misleading. *See* 1 JUDICIAL EDUCATION, WISCONSIN SUPREME COURT, JUDICIAL BENCHBOOK CR 17-11 (1992).

[5] Notwithstanding Lopez' argument to the contrary, the fact that the prosecutor argued "erroneously, in light of *Powers*" that *Batson* did not apply is not an admission of discriminatory purpose.

him to the illicit drugs to impute his knowing possession of those drugs.

Our review of a jury's verdict is sharply circumscribed. We must uphold the jury's verdict "unless the evidence, viewed most favorably to the state and the conviction, is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt." *State v. Poellinger*, 153 Wis. 2d 493, 507, 451 N.W.2d 752, 757-758 (1990). While more than proximity is required to satisfy "knowing possession," *see State v. Allbaugh*, 148 Wis. 2d 807, 812, 436 N.W.2d 898, 901 (Ct. App. 1989), the jury was presented with evidence of much more than Lopez' mere proximity to the contraband. "Possession of an illicit drug may be imputed when the contraband is found in a place immediately accessible to the accused and subject to his exclusive or joint dominion and control, provided that the accused has knowledge of the presence of the drug." *Schmidt v. State*, 77 Wis. 2d 370, 379, 253 N.W.2d 204, 208 (1977). The evidence summarized in Part I of this opinion, viewed most favorably to the State and the conviction, amply supports the verdicts.

*By the Court.*—Judgment affirmed.